**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY GONZALES,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>            Defendant. | Case No.  1:13-cv-01976-SKO<br><br>**ORDER ON PLAINTIFF'S COMPLAINT**<br><br>(Doc. No. 1) |

**INTRODUCTION**

Plaintiff Tommy Gonzales ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplement Security Income ("SSI") benefits pursuant to Title II and Title XVI of the Social Security Act.  42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 7.)

# FACTUAL BACKGROUND

Plaintiff filed applications for DIB and SSI on September 10, 2010, alleging disability beginning on September 9, 2009, due to a back injury as well as injury to both his knees and feet. (AR 179.)

## A.   Relevant Medical Evidence

In 2008 and 2009, Plaintiff complained of foot pain, lower back pain, and knee pain. (*See, e.g.,* AR 227, 229.) Plaintiff's correctional institution provided medical care related to these complaints, and he was referred to orthopedics for soft shoes and prescribed over-the-counter medication for back and knee pain. (AR 227, 229.) Plaintiff underwent an X-ray of his lumbar spine in March 2009 which showed degenerative disc and joint disease, mild hyperlordosis, and cholelithiasis. (AR 226.) An X-ray of Plaintiff's knee was also taken which showed a patellar spur, but there was no evidence of acute displaced fracture, dislocation, or significant degenerative changes. (AR 225.)

In November 2010, Plaintiff was referred to Gregory D. Hartman, D.P.M. At the examination, Plaintiff complained of bilateral heel pain and alleged pain while standing and walking. (AR 230.) X-rays showed minimal degenerative joint disease at the first metatarsophalangeal joint. (AR 231, 239, 300.) Dr. Hartman noted Plaintiff exhibited pain in both heels, with more on the right than the left, and the X-rays showed no heel spurs or erosive arthritis. (AR 231.) Plaintiff was diagnosed with plantar fasciitis and spondylosis of the lumbar joint. (AR 231.)

In April 2011, Plaintiff received injections for his plantar fasciitis, reported in May that his foot pain was "gone right now," and credited the injections for the pain relief. (AR 331, 337.)

On August 4, 2011, Dr. Hartman completed a physical capacity evaluation form, detailing Plaintiff's limitations. (AR 359.) He opined Plaintiff could continuously sit for only 1 hour; continuously walk or stand for only 10 minutes; sit for 3 to 4 hours out of an 8-hour workday; and stand and walk for a total of approximately 45 minutes of an 8-hour workday. (AR 359.) He opined Plaintiff's plantar fasciitis requires Plaintiff to change positions often, alternating between

sitting, standing, and lying down. (AR 359.) Dr. Hartman concluded that Plaintiff could lift and carry only up to 5 pounds, and listed his pain level as "moderate." (AR 359.)

On November 9, 2011, Plaintiff underwent surgery on his feet as treatment for his plantar fasciitis. (AR 387-90.)

On December 8, 2011, Dr. Hartman completed a work status report indicating Plaintiff needed to be off work following the surgery for his plantar fasciitis, and he would have to use a walker or crutches to ambulate. (AR 385.) He indicated that while Plaintiff was currently using crutches and a camboot walker, "[h]e should improve with time and the prognosis is to be fully able to work without cast or without crutches." (AR 385.) Dr. Hartman stated Plaintiff was "placed off work from December 8, 2011, through March 4, 2012." (AR 385.)

On January 3, 2012, F. Kalman, M.D., a state agency non-examining physician, reviewed the record and completed a physical residual functional capacity assessment of Plaintiff. (AR 279-85.) Dr. Kalman opined Plaintiff could only occasionally lift up to 20 pounds, could frequently lift and carry up to 10 pounds; stand, walk, and sit for about 6 hours in an 8-hour workdays; only occasionally climb, stoop, kneel, crouch, or crawl; could never perform balance activities; and should avoid exposure to extreme cold, vibrations, and hazards such as machinery and heights. (AR 279-82.)

On January 16, 2012, Dr. Hartman completed another physical capacity evaluation, indicating Plaintiff could lift and carry up to 5 pounds occasionally. (AR 395.) He indicated Plaintiff could not use his feet for repetitive movements, such as pushing and pulling leg controls. He opined Plaintiff was not able to bend, squat, crawl, or climb and could only occasionally make reaching movements. (AR 395.) Finally, Dr. Hartman checked boxes indicating Plaintiff had no restriction in his ability to tolerate unprotected heights or to be around moving machinery; Plaintiff was mildly restricted in his ability to be exposed to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes, and gases. (AR 395.) Differing from his August 2011 evaluation form, Dr. Hartman also found that Plaintiff was unable to sit upright for prolonged periods of time at a desk or console with his head in a forward flexed position. (AR 396.) He checked a box that Plaintiff's pain was "marked" and would preclude

3

activity which precipitates the pain and would restrict his ability to concentrate. (AR 396.) On January 16, 2012, Dr. Harman also completed another work status report, stating Plaintiff was evaluated and deemed able to return to work at full capacity on June 11, 2012. (AR 397.)

On March 28, 2012, Plaintiff appeared for a comprehensive orthopedic evaluation with Fariba Versali, M.D., a state-agency compensation examiner. (AR 408-11.) Plaintiff's chief complaints were of low back, foot, and knee pain. (AR 408.) Plaintiff explained that he was involved in a vehicle accident in 1980, and he has suffered low back pain since then for which he takes pain relievers. (AR 408.) Plaintiff reported he had experienced foot pain for a "long time," and had undergone endoscopic plantar fasciotomy on both his feet in 2011 as treatment for his plantar fasciitis. (AR 408.) Plaintiff said he received no improvement from the surgery, and walking and standing exacerbates his foot pain. (AR 408.) Plaintiff noted his knee pain comes and goes, but that his knee did not "bother him that much." (AR 408.)

Dr. Versali noted Plaintiff arrived at the examination with a cane which he had been using since his plantar fasciitis surgery, but he was able to walk without the cane. (AR 409.) Upon examination, Plaintiff walked with a normal gait; could untie his shoes and put them on without difficulty; moved on and off the examination table without difficulty; and could pick up a paperclip from Dr. Versali's hand without difficulty. Spurling's, Speed's, and Phalen's tests were all negative bilaterally. The Patrick's test exacerbated Plaintiff's lower back pain. While no tenderness or inflammation was observed in Plaintiff's bilateral upper extremities, there was tenderness on the right knee. (AR 410.) There was no other tenderness or inflammation in Plaintiff's lower extremities. (AR 410.)

Dr. Versali offered the following functional capacity assessment pursuant to the examination:

> From my assessment of the claimant, I do not feel the condition will impose any limitations for 12 continuous months. He walks with a normal gait. There is normal muscle bulk and tone in bilateral upper and lower extremities. X-ray reports of right foot, three views, date of service September 24, 2010, show very minimal first metatarsal phalangeal joint degenerative changes. X-ray report of left knee date of service March 24, 2009 shows patellar spare. There is no evidence for acute displaced fracture, dislocation or large joint fluid collection. Significant degenerative changes are not appreciated. There is an x-ray report of lumbar spine

4

date of service March 24, 2009. Impression: Degenerative disc disease and degenerative joint disease. Mild narrowing of the intervertebral disc spaces and osteophytes are consistent with degenerative disc disease. The claimant deferred flexion of lumbar region more than 70 degrees due to low back pain. I noticed when he was taking his socks from the floor, he was bending 90 degrees with no pain expression. The claimant states that foot pain is 8/10 in a zero to 10 pain scale right now. He was sitting comfortably with no pain.

He should be able to walk, stand and sit with no limitations.

He does not need an assistive device for ambulation.

He should be able to lift and carry with no limitations.

No postural limitations.

No manipulative limitations.

No other workplace environmental limitations.

(AR 411.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 74-75, 93-102, 103-04.) A hearing was held on January 11, 2012, before ALJ Robert Milton Erickson. (AR 30-66.)

    **1.    Testimony of Vocational Expert**

A Vocation Expert ("VE") testified at the hearing regarding the nature of Plaintiff's past work, and answered several hypothetical questions posed by the ALJ.

The ALJ asked the VE to consider a hypothetical individual who was 49 to 50 years old, with the same education and work history as Plaintiff, and who had the following limitations: could only occasionally lift and carry 20 pounds, and could frequently lift and carry 10 pounds; stand about 6 hours in an 8-hour day; sit 6 hours of an 8-hour day; never climb ladders, but could occasionally climb chairs and occasionally balance; occasionally balance stoop, crouch, crawl, kneel; and was to avoid concentrated exposure to extremes of cold and exposure to vibration and hazardous work environments. The ALJ asked the VE whether this person would be able to perform Plaintiff's past relevant work; the VE testified this person could not do so. (AR 52-53.)

The ALJ next asked the VE to consider the same hypothetical person and questioned whether such a person would be able to work in the national or local economies. The VE testified that this person would be able to perform sedentary unskilled work such as cashier, information clerk, and a general clerk. (AR 53-54.)

The ALJ posed a second hypothetical person with the same limitations as the first, but who was limited to lifting and carrying no more than 5 pounds; could stand or walk 7 hours of an 8-hour workday, but no more than 10 minutes continuously; and could sit 3 to 4 hours of an 8-hour workday, but no more than 60 minutes continuously. (AR 55.) The VE testified that such a person could not perform Plaintiff's past relevant work or any other work. (AR 55.)

In a third hypothetical, the ALJ asked the VE to consider an individual with the same limitations as set forth in the first hypothetical, but who was age 50 to 51 with the same education and past work experience as Plaintiff. (AR 56.) The VE testified that there would be work available for a person with those limitations.

Plaintiff's counsel then asked the VE whether, given the limitations posed in the first hypothetical, the hypothetical individual fit better into the sedentary category or the light exertional category. (AR 56.) The VE testified that he would "pretty well be able to do the majority of sedentary and light." (AR 56.)

Plaintiff's counsel then asked Plaintiff whether he had graduated from high school, and Plaintiff testified he had only completed the 11th grade. The ALJ asked the VE to revisit the first hypothetical posed and consider whether such a person with an 11th grade education could perform the alternative work previously identified. (AR 58.) The VE testified that the positions identified as alternative work were unskilled, and the difference between a high school education and an education ending in the 11th grade would not affect the ability to perform those positions. (AR 58.)

### 2. The ALJ's Decision

On May 18, 2012, the ALJ issued a decision, finding Plaintiff not disabled since September 10, 2009. (AR 16-25.) Specifically, the ALJ found that Plaintiff (1) had engaged in substantial gainful activity from January through March 2011 (AR 18); (2) Plaintiff had severe

impairments, including degenerative disc disease of the lumbar spine; degenerative joint disease of the left knee; bilateral plantar fasciitis; and obesity (AR 19); (3) did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 19); and (4) had the residual functional capacity ("RFC") to perform light work with the following modifications: stand about six hours of an eight hour workday; sit about six hours of an eight hour workday; never climb ladders; occasionally climb stairs, balance, stoop, crouch, crawl, and kneel; must avoid concentrated exposure to extremes of cold, vibrations and hazardous work environments (AR 19). The ALJ found that Plaintiff was unable to perform any of his past relevant work (AR 16), but he retained the ability to perform other work such as a cashier, information clerk, and a general clerk (AR 23-24). The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act at any time from September 10, 2010, through the date of decision. (AR 24.)

Plaintiff sought review by the Appeals Council on June 14, 2012. (AR 5.) The Appeals Council denied Plaintiff's request for review on August 29, 2013. (AR 4-8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981; 416.1481.

**C.     Plaintiff's Argument on Appeal**

On December 2, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decisions. Plaintiff argues the ALJ erred in failing to properly evaluate the opinion of Dr. Hartman, Plaintiff's treating podiatrist.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th

Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must

determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

The ALJ discredited Dr. Hartman's opinions in the first instance because he was a podiatrist who does not have the training to comment on Plaintiff's functional limitations with respect to his musculoskeletal impairments. Plaintiff argues even if this were a legitimate reason to discount Dr. Hartman's opinions regarding Plaintiff's ability to sit, bend, reach and be exposed to environmental irritants, it was not a legitimate reason to discount his opinions about Plaintiff's ability to stand, walk, lift, and carry as these are directly related to Plaintiff's feet impairments. (Doc. 15, 9:11-18.) The ALJ failed to credit Dr. Hartman's opinions regarding Plaintiff's ability to stand, walk, lift and carry without stating any reasons for doing so.

The Commissioner argues that Dr. Hartman is a podiatrist, and the ALJ was entitled to reject his opinion regarding limitations having nothing to do with Plaintiff's feet, including his ability to bend or his need to prevent exposure to occupational hazards and environmental extremes. As to the limitations relating to Plaintiff's feet, the ALJ found those limitations inconsistent with Dr. Hartman's January 2012 report stating Plaintiff could return to full work detail in June 2012. Dr. Hartman's report that Plaintiff could return to full work detail is supported by Dr. Vesali's March 2012 examination findings noting that Plaintiff could walk unassisted, had a normal gait, and his feet X-rays showed very minimal degenerative changes. Thus, the ALJ accepted Dr. Hartman's opinion that Plaintiff could return to full work detail in June 2012, and rejected Dr. Hartman's inconsistent findings that Plaintiff had walking, standing, and lifting limitations that would be inconsistent with a return to full work detail.

///

Although the Court agrees with Plaintiff that the ALJ could not properly reject Dr. Hartman's opinion regarding Plaintiff's standing, walking, and carrying limitations because Dr. Hartman was a podiatrist (which is why the ALJ rejected the other non-podiatric limitations stated), the ALJ nonetheless stated sufficient reasons to reject the podiatric portions of Dr. Hartman's opinions.

Dr. Hartman's January 16, 2012, physical capacities evaluation was completed on the same day that Dr. Hartman completed the work status report indicating Plaintiff was ready to return to full work status in June. The January 2012 capacity evaluation states Plaintiff can only sit, stand, and walk for two hours in an 8-hour workday. Thus, Plaintiff could only work upright in any position for 6 hours total, which is facially inconsistent with Dr. Hartman's work status report projecting Plaintiff would be ready to return to work by June 2012. At best, Dr. Hartman's January 2012 physical capacity evaluation reflects Plaintiff limitations at the time of examination only, but Dr. Hartman expected – based on the work status report – that Plaintiff would return to full work ability within 6 months. Moreover, Dr. Hartman's 6-month prognosis for recovery to full work status is buttressed by Dr. Versali's subsequent examination findings in March 2012. Dr. Versali noted that Plaintiff had adequately recovered from his foot procedures, Plaintiff exhibited a normal gait, he took his shoes on and off and got on and off the examination table without difficulty, and although he had a cane for walking, he was able to ambulate without it. (AR 408-11.) Given these examination findings, the ALJ was entitled to reject Dr. Hartman's August 2011 and January 2012 physical capacity assessments as inconsistent with Dr. Hartman's January 2012 work status report, as that work status report was supported by Dr. Versali's March 2012 examination findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (ALJ entitled to reject treating physician's opinion where it is inconsistent with clinical notes and other recorded observations regarding claimant's abilities).

Plaintiff argues that Dr. Hartman is "only accustomed to authorizing periods of disability for relatively small incremental periods as a physician should." Thus, the January 2012 work report was a 6-month prediction only, not a statement that Dr. Hartman actually believed Plaintiff's condition would improve by that time.

Even if Plaintiff were correct about what Dr. Hartman is accustomed to doing, Dr. Versali's opinion supported Dr. Hartman's projection of Plaintiff's condition in the work report assessment, as the ALJ noted.  Moreover, if a physician is only to provide a limited opinion about relatively small incremental periods, Dr. Hartman's functional capacities report was itself temporal and did not reflect an opinion of Plaintiff's limitations in the future -- it was only a snapshot of his limitations in January 2012.  Because Dr. Versali offered current examination findings showing that Plaintiff was healing adequately from his foot procedure by March 2012, the probative value of Dr. Hartman's January 2012 physical capacities evaluation is diminished and rendered stale. The ALJ was entitled to reject Dr. Hartman's opinions in the physical capacities evaluation forms in light of his prognosis of Plaintiff's ability to return to full work status within 6 months.

Plaintiff also argues that if the ALJ should have credited Dr. Hartman's January 2012 opinion as to Plaintiff's standing, walking, and lifting limitations, then Plaintiff is entitled to a closed period of disability.  Because the Court finds Dr. Hartman's opinion was properly considered by the ALJ, the Court need not take up Plaintiff's contingent argument.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff Tommy Gonzales.

IT IS SO ORDERED.

Dated:   **March 6, 2015**             /s/ Sheila K. Oberto
                                               UNITED STATES MAGISTRATE JUDGE